**FILED**
**Nov 19, 2021**
**07:43 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| KIMBERLY HAGAN, | ) | |
|     Employee, | ) | **Docket No. 2019-04-0105** |
| v. | ) | |
| POTOMAC CORP., | ) | **Case No. 26575-2021** |
|     Employer, | ) | |
| And | ) | |
| THIRD COAST INS. CO., | ) | **Judge Robert Durham** |
|     Insurer. | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court addressed Ms. Hagan's request for an expedited hearing with an on-the-record determination on November 8, 2021. Ms. Hagan sought medical and temporary disability benefits for a left shoulder injury, which she asserted primarily arose out of and in the course and scope of her employment with Potomac. The unauthorized doctor who performed surgery corroborated her assertion. Potomac argued that the authorized physician, to whom a presumption of correctness is afforded, believed Ms. Hagan's injury is not work-related. After considering the evidence and testimony, the Court holds that Ms. Hagan demonstrated a likelihood of prevailing at trial in establishing causation and grants her request for medical and temporary partial disability benefits.

### History of Claim

Potomac, also known as Nielsen-Bainbridge, is a factory that makes picture frames. Ms. Hagan worked on the assembly line making an average weekly wage of $440.94.[1] On March 24, 2021, her job involved lifting a "ten-foot pallet" onto a roller, loading the pallet with pieces of wood, and pushing and pulling it onto a table. From

---

[1] This number is derived from the wage statement; however, the record is ambiguous as to Ms. Hagan's actual term of employment with Potomac. While the wage statement indicates she started in April 2020, the first report of injury lists March 2021 as her date of hire. Additionally, two medical records stated she began work in October 2020.

1

there, she shimmied the pallet back and forth to scoot it across the table to the other end. Ms. Hagan described this activity as very repetitive.

Ms. Hagan testified that this repetitive activity caused pain in her left shoulder that gradually worsened as the day progressed. She could not point to a single, acute incident that caused the pain. After a few hours of work, her pain worsened, so she notified her supervisor and requested medical treatment.

Shelly Modrall, in Human Resources, stated she provided Ms. Hagan with a panel of doctors, and Ms. Hagan chose Dr. Toney Hudson. However, due to Ms. Hagen's pain, she left before actually signing the panel.

Ms. Hagan saw Nurse Practitioner Chris Archer at Dr. Hudson's office, although Dr. Hudson signed off on each note. Ms. Hagan could not remember a specific incident of injury but reported a gradual progression of pain from the top of her left shoulder to her elbow as she performed her job. She rated her pain level as seven or eight out of ten. N.P. Archer diagnosed Ms. Hagan with inflammation and a left rotator cuff tear. He prescribed steroids and modified duty.

At Ms. Hagan's next appointment, she signed the previously provided panel. N.P. Archer ordered an MRI, which revealed moderate acromioclavicular osteoarthritis and a rotator cuff tear. N.P. Archer informed Ms. Hagan that she "appeared to have a complete through and through tear" of her rotator cuff. However, since she had "no injury whatsoever" at work, and her shoulder just became more painful throughout the day, it was not a work-related injury. He advised her to seek orthopedic care on her own, and Potomac denied her claim.

Ms. Hagan then sought treatment with orthopedist Dr. James McGehee on April 9. According to his records, she initially felt some soreness in her shoulder but then felt "sudden pain while lifting and pushing a pallet." She denied any history of left shoulder problems and explained she was on a leave of absence because she could not do her job.[2]

Following an exam and MRI review, Dr. McGehee diagnosed a "left shoulder strain with high grade partial-thickness rotator cuff tear," bursitis, tendinitis, a SLAP tear, and acromioclavicular arthritis. He prescribed physical therapy, continued her restriction against using her left arm, and scheduled a six-week follow-up appointment. As to causation, Dr. McGehee said that Ms. Hagan described a "reasonable mechanism" for a shoulder strain which can cause a partial tear. He believed that the injury was "greater than 50% work-related."

---

[2] Potomac also admitted in its pre-hearing statement that it could not accommodate Ms. Hagan's restrictions.

In August, Dr. McGehee prepared a signed note addressing causation:

Kimberly Hagan is currently under my medical care. In my opinion, there were no features on her diagnostic imaging or at the time of surgery that would clearly indicate that this was a chronic tear in her left shoulder. Therefore, in the setting of an appropriate mechanism, I would conclude that her injury is greater than 50% work related. She also reported to me no prior shoulder problems. We expect up to six months to return to full activities.

Ms. Hagan also provided a "worklink" physicians' report from Dr. McGehee, dated October 27, that said Ms. Hagan could return to work with a ten-pound lifting restriction.

To rebut Dr. McGehee's opinion, Potomac offered statements from Dr. Hudson. In a signed letter to Potomac's counsel, Dr. Hudson acknowledged that he supervised N.P. Archer and reviewed his treatment notes. He then offered his causation opinion:

Supraspinatus tears can be caused acutely by suddenly lifting something too heavy, falling on your arm, or dislocating your shoulder. Ms. Hagan did not experience either [sic] of those events. Other cases are the result of the tendon wearing down over time, resulting in a degenerative tear. Ms. Hagan's MRI also revealed degenerative changes, more likely than not, her tear is the result of degenerative changes.

Dr. Hudson also provided a Rule 72 Declaration that established his qualifications as a board-certified internal medicine specialist. He gave his opinion within a reasonable degree of medical certainty that Ms. Hagan's left upper extremity complaints were not caused or aggravated by her alleged March 24 work incident.

Finally, Ms. Hagan admitted that she fell on her left side while working at a nursing home in 2018; however, she stated she did not receive any medical attention for her left shoulder and that she had no residual pain from the fall afterwards.

**Findings of Fact and Conclusions of Law**

The record is clear that Ms. Hagan suffered from a partial left rotator cuff tear. The dispute is whether the tear arose primarily out of and in the course and scope of her employment. To prevail, Ms. Hagan must present evidence showing she is likely to prevail at a trial on the merits. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

In deciding the issue, the Court first notes that it finds Ms. Hagan's account of her

3

activities and pain progression on March 24 to be credible. She candidly admitted she could not identify an acute incident, even after Potomac denied her claim. This frankness permits the Court to find her statements that she never suffered shoulder pain before March 24 to be credible as well, particularly since Potomac offered little to dispute this assertion. However, credibility is not enough, as Ms. Hagan must also prove that her account is consistent with a compensable injury under Tennessee workers' compensation law.

For Ms. Hagan's injury to be compensable, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and [be] identifiable by time and place of occurrence. …" Tenn. Code Ann. § 50-6-102(14)(A) (2021). "Set of incidents" includes repetitive trauma sustained in the regular course of work activities over time. *Ibarra v. Amazon Fulfillment Serv., Inc.*, 2020 TN Wrk. Comp. App. Bd. LEXIS 13, at *5 (Apr. 1, 2020). Proof of a "single, sudden event" is not necessary so long as the employee can prove a "compensable set of incidents over an identifiable period of time." *Id*. In this case, the Court holds that Ms. Hagan's work activities on March 24 meet the statutory definition of a "set of incidents" that could give rise to a compensable injury.

To prove causation, however, Ms. Hagan's testimony must be supported by medical proof. *See* Tenn. Code Ann. § 50-6-102(14). She must show to a reasonable degree of medical certainty that her work activities contributed more than fifty percent in causing her rotator cuff tear, considering all causes. Reasonable degree of medical certainty means "it is more likely than not considering all causes, as opposed to speculation or uncertainty." *Id*.

Here, the Court must first weigh differing medical opinions. When confronted with conflicting expert opinions, the Court has discretion to determine which opinion to accept. *Bass v. The Home Depot U.S.A, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017). The Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Id.*

The Court first notes that Dr. Hudson was Ms. Hagan's authorized physician, entitling his causation opinion to a presumption of correctness. *See* Tenn. Code Ann. § 50-6-102(14)(E). However, his opinion may be overcome by a preponderance of the evidence. *Id*.

As for the experts' qualifications, Dr. McGehee is an orthopedic surgeon, while Dr. Hudson is an internal medicine specialist. Dr. McGehee's training and experience with orthopedic conditions are advantageous here.

Regarding their examinations, the court credits Dr. McGehee because he

4

physically examined and treated Ms. Hagan while Dr. Hudson merely oversaw the nurse practitioner's treatment. Also, Dr. McGehee physically saw her rotator cuff during surgery. Based on his observation, he found nothing to indicate a chronic tear. He believed her work activities were an "appropriate mechanism" for causing the tear. Given that she did not have a history of left shoulder problems, he concluded that her employment was the primary cause of her rotator cuff tear.

Under the circumstances, the Court affords greater weight to Dr. McGehee's causation opinion, and his opinion, combined with Ms. Hagan's testimony, rebuts Dr. Hudson's presumptive opinion. Thus, the Court holds that Ms. Hagan is likely to prove she suffered a compensable injury on March 24, 2021, and is entitled to workers' compensation benefits.

Regarding medical benefits, the Court finds that Potomac denied Ms. Hagan's claim, which compelled her to seek unauthorized treatment with Dr. McGehee. Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2016).

Here, the Court finds the circumstances justified Dr. McGehee's unauthorized care. The Appeals Board has stated, "An employer may risk being required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury as required by Tennessee Code Annotated section 50-6-204(a)(1)(A)." *Id.* at *8-9. Given that he has already performed surgery, the Court holds that Potomac shall pay for the reasonable and necessary care provided or recommended by Dr. McGehee for Ms. Hagan's work-related injury and that he shall be the authorized doctor for any future treatment.

Finally, the Court considers temporary disability benefits. For entitlement, Ms. Hagan must prove: (1) disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *See Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). Where the disability is not total, the employee may recover temporary partial disability benefits if the employee is able to resume some gainful employment but has not reached maximum recovery. *Id.*

N.P. Archer, with Dr. Hudson's approval, limited Ms. Hagan to no use of her left arm. This restriction prevented Ms. Hagan from returning to work at Potomac and led to her "leave of absence." When Dr. McGehee saw her on April 9, he continued the restriction against using her left arm until he saw her for a follow-up appointment six weeks later. Unfortunately, the account of Dr. McGehee's treatment ends until the Worklink note in October, where he gave Ms. Hagan a ten-pound lifting restriction.

The Court finds sufficient evidence to show that Ms. Hagan is likely to prove entitlement to temporary partial disability benefits from March 25 through May 21, 2021, when she was scheduled to return to Dr. McGehee. Ms. Hagan may be entitled to additional temporary disability benefits, but the Court is unable to make a finding as to the extent and duration of her disability based on the current record.

The final issue concerns Ms. Hagan's average weekly wage. The record is unclear as to her date of hire. The wage statement begins on April 5, 2020, but two medical records state she began work in October, and the first report of injury lists March 15, 2021 as her date of hire. Nevertheless, based on the wage statement Potomac provided, the Court holds that Ms. Hagan is likely to prove an average weekly wage of at least $440.94, which calculates to a compensation rate of $293.96. Thus, Potomac shall pay Ms. Hagan $2,393.67 in temporary partial disability benefits for the period of March 25 through May 21, 2021.

IT IS, THEREFORE, ORDERED THAT:

1. Potomac shall pay for the reasonable and necessary past medical treatment recommended or provided by Dr. James McGehee for Ms. Hagan's work-related left shoulder injury. Dr. McGehee is further designated as Ms. Hagan's authorized physician for any additional care she may require under Tennessee Workers' Compensation Law.

2. Potomac shall pay Ms. Hagan $2,393.67 in past temporary partial disability benefits.

3. This case is set for a Scheduling Hearing on **January 5, 2022, at 9:30 a.m. Central Time**. The parties must call 615-253-0010 to participate. Failure to appear might result in a determination of the issues without the party's participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED on November 19, 2021.**

_Robert Durham_ (signature)

**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order on Show Cause Hearing
4. Request for Expedited Hearing
4. Order Compelling Discovery
5. Docketing Notice
6. Potomac's Pre-Hearing Brief

Exhibits:
1. Ms. Hagan's affidavit
2. Choice of Physician forms
3. Wage Statement
4. Medical records of Dr. James McGehee
5. Causation statement from Dr. Toney Hudson
6. Affidavit from Dr. Hudson
7. Ms. Hagan's deposition excerpts
8. First Report of Injury
9. Declaration of Shelly Modrall
10. Declaration of Elaine Donhoffner
11. Causation letter from Dr. McGehee

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on November 19, 2021.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| Kimberly Hagan | | X | Kimhagan17@gmail.com |
| Gregory Fuller | | X | ghfuller@mijs.com |

_____

**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*